UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LEONARD WILKINS,                    :
        Plaintiff               :
                                :
    v.                              :   CIVIL NO.3:CV-04-2397
                                :
                                :   (Judge Conaboy)
MR. BITTENBENDER, ET AL.,           :
        Defendants              :

_____

## MEMORANDUM
## Background


This _pro_ _se_ civil rights action was initiated by Leonard
Wilkins, an inmate presently confined at the Federal
Correctional Institution, Otisville, New York (FCI-Otisville).
Service of the complaint was previously ordered.

Named as Defendants are the following officials at the
Plaintiff's prior place of incarceration, the Allenwood Federal
Correctional Institution, White Deer, Pennsylvania (FCI-
Allenwood): Disciplinary Hearing Officers (DHO) Kevin
Bittenbender and Al Farley; Correctional Officers Nathaniel
Carper and Jesse Henninger; Warden S.A. Yates; Counselor Viola
Hursh; Lieutenants Lamar Shepard and Jim Lyons; Associate Warden
Joe Dubascus; UNICOR Factory Foremen Steve Tafelski[1] and Kathy
Cool; Legal Advisor Joseph McCluskey; and Case Manager Brandyn

_____

[1] Defendant Tafelski is deceased.  _See_ Doc. 18.

1

Cozza-Kozicki.  The Plaintiff is also proceeding against seven (7) John Doe Defendants who are described as being prison mail room employees.

Plaintiff states that during August, 2000, the UNICOR smoking room at FCI-Allenwood was converted into a smoking room/laundry room.  The purpose of the conversion was to permit in house laundering of dirty rags and clothing from the UNICOR staining operation.  Wilkins indicates that this new operation was not properly authorized and its existence was withheld from UNICOR supervisory officials.  During August, 2000, Wilkins began working full time in the smoking/laundry room.  According to the complaint, Factory Foreman Tafelski informed the Plaintiff that if he "could make this laundry venture successful," he would be given a pay grade increase.  Doc. 1, ¶ 20.

Plaintiff indicates that he subsequently informed Tafelski that the ventilation in the smoking/laundry room was inadequate due to the large amount of cigarette smoke.  Although Defendant Tafelski eventually installed an ineffective twelve inch (12") wall fan eighteen (18) months later, the ventilation was never altered nor was the smoking room relocated.

On or about October 29, 2002, Plaintiff sent a request slip to Foreman Cool informing her of the pay grade agreement between he and Tafelski (who was out of work for health reasons).  Cool informed Plaintiff that his job position was not entitled to the requested increased pay grade.  The Defendant also purportedly

subjected Wilkins to verbal harassment including a threat of a pay demotion.  Plaintiff adds that during this same time period, Cool gave the same pay grade increase that he was requesting to another prisoner having the same job title.

Wilkins then sought immediate relief from Factory Manager Brannon McGrady, who denied relief on the basis that "it was up to Cool to grant plaintiff a promotion." Id. at ¶ 25.  Within the next month, Counselor Hursh allegedly refused to accept two (2) separate grievances submitted by Plaintiff regarding the denial of the pay increase and his exposure to second hand smoke.[2]

Plaintiff next asserts that he submitted a request to the prison's Health Services Department on December 10, 2002, asking to be tested for adverse effects from working in an environment where he was subjected to second hand smoke.  A John Doe member of the Health Services staff allegedly forwarded Wilkins' request to Manager McGrady, who threatened the prisoner with job termination or pay reduction unless he withdrew his request for medical testing.  Due to his failure to withdraw the request, Plaintiff contends that he was reassigned to another prison job.

After seeking administrative relief from Case Manager Dewart on December 17, 2002, Plaintiff contends that he became a target for harassment.  The complaint proceeds to set forth a

---

[2]  The Plaintiff notes that on June 24, 2003, he became aware that the laundry room had been dismantled.

3

variety of retaliatory actions allegedly undertaken by prison officials against Wilkins including: loss of the Plaintiff's work locker and chair; daily cell searches by Defendant Henninger for a period of approximately four (4) weeks (December 10, 2002 to January 5, 2003); verbal threats; being falsely labeled as an informant; having the water and electricity shut off to his cell; various incidents of confiscation of personal legal materials; interference with both incoming and outgoing legal mail; baseless disciplinary charges[3]; excessive disciplinary sanctions by DHOs Bittenbender and Farley; wrongful placement on refusal status with respect to the Inmate Financial Responsibility program by Defendant Cozza-Kozicki; unwarranted limitations placed on submission of institutional grievances; denial of inmate grievance forms; improper placement in the prison's Special Housing Unit (SHU); loss of institutional employment. Plaintiff seeks injunctive and declaratory relief as well as compensatory and punitive damages.

Defendants have filed a motion to dismiss or in the alternative, for summary judgment. <u>See</u> Doc. 21.  The motion has been briefed and is ripe for consideration.

---

[3] Plaintiff was charged with improper use of another inmate's mailing privileges.  DHO Farley presided at the subsequent misconduct hearing but did not sanction Plaintiff to a loss of good time credits.  He was later charged with possession of contraband in the SHU on two separate occasions.  DHO Bittenbender presided at those disciplinary hearings and imposed a loss of good time credit with respect to each offense.

## Discussion

Defendants claim entitlement to entry of dismissal or in the alternative summary judgment on the grounds that: (1) Wilkins failed to exhaust his available administrative remedies; (2) he has not proved any physical injuries and cannot recover damages for mental anguish; (3) Wilkins' request for injunctive relief are moot; (4) the allegations against DHOs Bittenbender and Farley are subject to dismissal for lack of subject matter jurisdiction and (5) the numerous claims of misconduct cited set forth in the complaint do not rise to the level of a constitutional violation.

## Standard of Review

Defendants' motion is accompanied by evidentiary materials [documents] outside the pleadings which are relevant for purposes of both determining the issue of administrative exhaustion as well as their alternative arguments.  Rule 12(b) provides in part as follows:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b).  The Court will not exclude the evidentiary materials [documents] accompanying Defendants'

motion.  Thus, their motion will be treated as solely seeking
summary judgment.   Summary judgment is appropriate if the
"pleadings, depositions, answers to interrogatories, admissions
on file, together with affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed.R.Civ.P.
56(c).

> [T]he plain language of Rule 56(c) mandates the entry
> of summary judgment, after adequate time for discovery
> and upon motion, against a party who fails to make a
> showing sufficient to establish the existence of an
> element essential to that party's case, and on which
> that party will bear the burden of proof at trial.  In
> such a situation, there can be "no genuine issue as to
> any material fact," since a complete failure of proof
> concerning an essential element of the nonmoving
> party's case necessarily renders all other facts
> immaterial.  The moving party is "entitled to a
> judgment as a matter of law" because the nonmoving
> party has failed to make a sufficient showing on an
> essential element of her case with respect to which
> she has the burden of proof.  "[T]he standard [for
> granting summary judgment] mirrors the standard for a
> directed verdict under Federal Rule of Civil Procedure
> 50(a)...."

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986).

The moving party bears the initial responsibility of
stating the basis for its motion and identifying those portions
of the record which demonstrate the absence of a genuine issue
of material fact.  The moving party can discharge that burden by
"'showing' . . . that there is an absence of evidence to support
the nonmoving party's case."  Celotex, supra, 106 S.Ct. at 2553
and 2554.  Once the moving party has satisfied its burden, the
nonmoving party must present "affirmative evidence" to defeat

the motion, consisting of verified or documented materials.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

Issues of fact are "genuine only if a reasonable jury,

considering the evidence presented could find for the nonmoving

party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir.

1988).  Only disputes over facts that might affect the outcome

of the suit will preclude the entry of summary judgment.  Id.

In evaluating a motion for summary judgment, the entire record

must be examined in the light most favorable to the nonmoving

party. The parties' pending cross summary judgment motions will

be addressed in accordance with the above standards.

**Administrative Exhaustion**

     Defendants' initial argument maintains that Wilkins has

failed to exhaust his available administrative remedies with

respect to his:  Second Cause of Action (denial of due process

with respect to UNICOR job assignment and allegation of being

exposed to environmental tobacco smoke): Third Cause of Action

(equal protection violation); Fourth Cause of Action (infliction

of mental anguish for seeking to redress his grievances); and

Fifth Cause of Action (conspiracy for purpose of subjecting

Plaintiff to retaliation).  Wilkins indicates that exhaustion

should be excused because the Defendants prevented or interfered

with his submission of institutional grievances.

     42 U.S.C. § 1997e(a) provides as follows:

          No action shall be brought with respect to
          prison conditions under Section 1979 of the

Revised Statutes of the United States (42
U.S.C. 1983), or any other federal law, by a
prisoner confined in any jail, prison, or
other correctional facility until such
administrative remedies as are available are
exhausted.

Section 1997e(a) requires administrative exhaustion

"irrespective of the forms of relief sought and offered through

administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992

(2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Claims

for monetary relief are not excused from the exhaustion

requirement.  Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000).

Dismissal of an inmate's claim is appropriate when a prisoner

has failed to exhaust his available administrative remedies

before bringing a civil rights action.  Ahmed v. Sromovski, 103

F. Supp. 2d 838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur

prior to filing suit, not while the suit is pending."  Tribe v.

Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing

Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative

exhaustion requirement constitutes an affirmative defense.  See

e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert.

denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19,

29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d

Cir. 1997)(holding, in the context of a Title VII case, that

failure to exhaust administrative remedies is an affirmative

defense).  Consequently, a prisoner does not have to allege in

his complaint that he has exhausted administrative remedies.

Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002).  Rather, it is the
burden of a defendant asserting the defense to plead and prove
it.  Id.; Williams v. Runyon,130 F.3d  568, 573 (3d Cir. 1997);
Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991); Fed. R. Civ.
P. 8(c).

The BOP has established a multi-tier Administrative Remedy
Program whereby a federal prisoner may seek review of any aspect of
his imprisonment.[4]  See 28 C.F.R. §§ 542.10-542.19 (1998).  "This
program applies to all inmates confined in institutions operated by
the Bureau of Prisons, to inmates designated to Community
Corrections Centers (CCCs) under Bureau of Prisons' responsibility,
and to former inmates for issues that arose during their
confinement but does not apply to inmates confined in other non-
federal facilities."  Id. at § 542.10.

---

4. Matters excluded from this program are set forth at 28
C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to
> submit a Request or Appeal on behalf of another
> inmate.  This program is intended to address
> concerns that are personal to the inmate making
> the Request or Appeal, but shall not prevent an
> inmate from obtaining assistance in preparing a
> Request or Appeal, as provided in § 542.16 of
> this part.
> (b) Requests or Appeals will not be accepted
> under the Administrative Remedy Program for
> claims for which other administrative
> procedures have been established, including
> tort claims, Inmate Accident Compensation
> claims, and Freedom of Information or Privacy
> Act requests.  Staff shall inform the inmate in
> writing of the appropriate procedure if the
> Request or Appeal is not acceptable under the
> Administrative Remedy Program.

The program provides that, with certain exceptions, "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request For Administrative Remedy."[5] Id. at § 542.13(a).  Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a).  If a valid reason for delay is given, an extension of the filing time may be granted.  Id. at 542.14(b).  The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond.  Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15.  Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response.  Id.  "When the inmate demonstrates a valid reason for

---

5. CCC inmates are not required to seek informal resolution. Id. at § 542.13(b).  Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals.  Id. Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution."  Id.

delay, these time limits may be extended." <u>Id</u>.  The Regional
Director has 30 calendar days to respond and the General Counsel
has 40 calendar days in which to respond.  <u>Id</u>. at § 542.18.

The response time provided for at each level may be extended
in writing "once by 20 days at the institution level, 30 days at
the regional level, or 20 days at the Central Office level."  <u>Id</u>.
Additionally, "[i]f the inmate does not receive a response within
the time allotted for reply, including extension, the inmate may
consider the absence of a response to be a denial at that level."
<u>Id</u>.

In support of their argument, Defendants have submitted a
declaration under penalty of perjury by the BOP's Assistant General
Counsel Douglas S. Goldring, Esq.  Attorney Goldring states that
based on a review of the BOP's computerized records, Plaintiff has
initiated a total of one hundred and sixteen (116) requests for
administrative relief.  <u>See</u> Doc. 31, Exhibit 1, ¶ 11.  According to
Goldring, grievances regarding thirteen (13) issues were
administratively exhausted.

A review of the record, particularly the opposing brief and
accompanying exhibits submitted by Wilkins, shows that there are
issues of material fact in dispute as to whether the Plaintiff's
purportedly unexhausted claims should be dismissed for non-
exhaustion.  Wilkins has set forth facts which could provide a
proper basis as to why he should be excused from the exhaustion
requirement.  Accordingly, the Defendants' request for summary

judgment on the basis of non-exhaustion with respect to said claims will be denied.

**Mental Anguish**

Defendants' second argument notes that Wilkins' First and Fourth Causes of Action allege that he suffered mental anguish as a result of the Defendants' alleged harassment.  They note that since Plaintiff does not alleges that he suffered any physical injury, his complaint to the extent that it seeks to recover for emotional injury is barred under 42 U.S.C. § 1997e(e).  In his opposing brief, Plaintiff acknowledges "that he cannot show physical injuries."  Doc. 42, p. 7.

Section 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  In Allah v. Al-Hafeez,  226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages.  However, the Court added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

Under the standards announced in Allah, Wilkins' civil rights claims which clearly assert violation of his constitutional rights and seek both compensatory and punitive damages are not barred by

Section 1997e(e) to the extent that they seek non-compensatory damages.  See Ostrander v. Horn, 145 F. Supp. 2d 614, 618 (M.D. Pa. 2001).[6]

**Verbal Harrassment**

Incorporated in their § 1997e(e) argument is the Defendants' claim that Plaintiff's assertions regarding use of inappropriate language do not rise to the level of a constitutional violation. See Doc. 30, p. 14.

It has been held that the use of words generally cannot constitute an assault actionable under § 1983.  Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.), cert. denied, 414 U.S. 1033 (1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983."); and Jones v. Superintendent, 370 F. Supp. 488, 491 (W.D. Va. 1974).

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973); see also Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d

---

[6] It is noted that in Ostrander, unlike the present case there was a specific finding that the prison officials' conduct did not violate the prisoner's constitutional rights.

Cir. 1986) (Mem.).

Further, it has also been held that a constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause, see Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.), cert. denied, 502 U.S. 879 (1991).

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. Bieros v. Nicola, 860 F. Supp. 226, 233 (E.D. Pa. 1994); see also Prisoners' Legal Ass'n, 822 F. Supp at 189; Murray, 809 F. Supp. at 384.

Wilkins has not alleged that the purported verbal harassment was accompanied by the type of reinforcing physical act contemplated under Northington and Douglas. Likewise, since Wilkins did not suffer a change or denial of a constitutionally

14

protected right or status, his allegations of verbal abuse and
threats do not rise to the level of a viable civil rights claim.

**Mootness**

It is next argued that the Plaintiff's transfer to FCI-
Otisville, which occurred prior to the initiation of this action,
renders his claims for prospective relief (restoration of his pay
grade and longevity) moot.  Plaintiff's opposing brief asserts that
he is still suffering adverse effects after his transfer and he
notes that he remains eligible for transfer back to FCI-Allenwood.

Adjudicatory power of a federal court depends upon "the
continuing existence of a live and acute controversy."  Steffel v.
Thompson, 415 U.S. 452, 459 (1974) (emphasis in original).  "The
rule in federal cases is that an actual controversy must be extant
at all stages of review, not merely at the time the complaint is
filed."  Id. at n.10 (citations omitted).  "Past exposure to
illegal conduct is insufficient to sustain a present case or
controversy regarding injunctive relief if unaccompanied by
continuing, present adverse effects."  Rosenberg v. Meese, 622 F.
Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414
U.S. 488, 495-96 (1974)).

Furthermore, "[a]bsent class certification, an inmate's claim
for injunctive and declaratory relief in a section 1983 action
fails to present a case or controversy once the inmate has been
transferred."  Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)
(citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548,

15

1555 (M.D. Fla. 1992).

It is undisputed that Wilkins was transferred to FCI-Otisville prior to his initiation of this action.  <u>See</u> Doc. 1, ¶ 3.  There is no indication that Plaintiff will be returned to FCI-Allenwood in the foreseeable future.  In light of Plaintiff's transfer to FCI-Otisville and the standards announced in <u>Steffel</u> and <u>Wahl</u>, his complaint to the extent that it seeks declaratory and injunctive relief is subject to dismissal on the basis of mootness.

**John Doe Defendants**

In a footnote, Defendants argue that the use of John Doe defendants is not authorized by the Federal Rules of Civil Procedure.  <u>See</u> Doc. 30, p. 16, n.9.  Plaintiff counters that he will ascertain the names of the John Doe defendants via discovery.

John Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed."  <u>Johnson v. City of Erie</u>, 834 F. Supp. 873, 878 (W.D. Pa. 1993) (citations omitted).  Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them.  <u>Scheetz v. Morning Call, Inc.</u>, 130 F.R.D. 34, 37 (E.D. Pa. 1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Pursuant to the above discussion, the Defendants' apparent request for entry of summary judgment in favor of the John Doe Defendants will be denied at this juncture.  However, if

Plaintiff's action survives the present request for summary judgment, he must identify any John Doe Defendants within a reasonable time period or they shall be dismissed from this action under the authority of <u>Scheetz</u>.

**<u>Respondeat Superior</u>**

In another footnote, Defendants seek summary judgment on behalf of Warden Yates because there are no allegations that he had personal involvement in any unconstitutional acts.  <u>See</u> Doc. 30, 16, n. 10.  Plaintiff counters that the personal involvement requirement was satisfied because he sent letters and grievance appeals to Yates which informed the Defendant of the constitutional misconduct directed towards him.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements:  (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 638 (3d Cir. 1995); <u>Shaw by Strain v. Strackhouse</u>, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Civil rights claims brought cannot be premised on a theory of <u>respondeat superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  <u>See Rizzo v.</u>

Goode, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>,
546 F.2d 1077 (3d Cir. 1976).  As explained in <u>Rode</u>:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . . .
> [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and acquiescence,
> however, must be made with appropriate
> particularity.

<u>Rode</u>, 845 F.2d at 1207.

Purported conduct of correctional officials which occurs after
an alleged civil rights violation cannot be the basis of a § 1983
claim because there is insufficient personal involvement.  The
Third Circuit has recognized that imposition of liability for
conduct of a policymaker after the events in question would impose
liability in the absence of personal involvement.  <u>Rode</u>, 845 F.2d
at 1208.

Averments that a supervisory official approved or ratified a
subordinate's conduct after the event were insufficient for
liability.  <u>Clark v. Borough of Hanover</u>, Civ. No. 92-595, slip op.
at 14 (M.D. Pa. Sept. 11, 1992) (Caldwell, J.); <u>see also</u> <u>Holman v.
Walls</u>, Civ. A. No. 86-1 JRR, 1989 WL 66636 at 6* (D. Del. June 13,
1989), (failure to discipline after the fact was insufficient to
show a policy); <u>Krisko v. Oswald</u>, 655 F. Supp. 147, 152 (E.D. Pa.
1987) (post hoc approval insufficient).

Based on the nature of Plaintiff's allegations regarding
Warden Yates, it is apparent that he is attempting to establish
liability against Yates solely on the basis of his supervisory

capacity.  Under the standards developed in <u>Capone</u>, such an assertion is insufficient for establishing civil rights liability. Since there are no allegations that Warden Yates had direct involvement or acquiescence in the alleged constitutional misconduct, he is entitled to an entry of summary judgment.

**<u>Prison Employment</u>**

Defendants next claim that because Plaintiff does not enjoy a constitutional right to be paid a particular wage for prison employment, his Second Cause of Action to the extent that it asserts claims based upon his failure to be promoted and his transfer from one work assignment to another is meritless. Plaintiff states that he was entitled to the pay grade promotion because he fulfilled his portion of the verbal contract that he had with Defendant Tafelski.  <u>See</u> Doc. 42, p. 17.

An inmate does not have a protected liberty or property interest in continued prison employment.  <u>James v. Quinlan</u>, 866 F.2d 627, 629-30 (3d Cir.), <u>cert. denied</u>, 493 U.S. 870 (1989); <u>Bryan v. Werner</u>, 516 F.2d 233, 240 (3d Cir. 1975).  The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right.  Furthermore, civil rights litigation cannot be employed to enforce a verbal contract.

In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court held that while under certain circumstances, states may create liberty interests protected by the Due Process Clause,

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such

19

> an unexpected manner as to give rise to protection by the
> Due Process Clause of its own force . . ., nonetheless
> imposes atypical and significant hardship on the inmate
> in relation to the ordinary incidents of prison life.

Id. at 484 (citations omitted).  Furthermore, although Sandin "did

not instruct on the correct methodology for determining when prison

regulations create a protected property interest[,]" as opposed to

a liberty interest, the "law is well established . . . that an

inmate's expectation of keeping a specific prison job, or any job,

does not implicate a protected property interest." Bulger v. United

States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995).  See also

Coakley v. Murphy, 884 F.2d 1218, 1221 (9th Cir. 1989) (holding

inmates have no property interest in continuing in work-release

program); Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986)

(finding Constitution does not create a property interest in prison

employment).

Pursuant to the above discussion, neither the Plaintiff's

request for compensation due to a failure to be promoted, his

assertion of a breach of oral contract,  nor his claim relating to

his transfer to a different institutional job assignment set forth

a valid claim of constitutional misconduct.[7]

---

[7]  Defendants additionally note that pursuant to UNICOR policy
the Plaintiff was not entitled to a pay raise.  Furthermore, the
prisoner's transfer to a different job occurred only after he
expressed concerns about his exposure to enviromental tobacco
smoke.  They add that Plaintiff was transferred to a new job at the
same pay grade.  Consequently, they conclude that Wilkins' UNICOR
related claims lack arguable merit.

**Environmental Tobacco Smoke (ETS)**

Plaintiff contends that he was exposed to ETS while working in the smoking/laundry room. Defendants describe Wilkins as being a smoker who requested a job assignment in the smoking/laundry room. They note that an ETS claim is not properly brought as a due process violation under the Fifth Amendment but rather as an Eighth Amendment violation. This Court agrees that Plaintiff's ETS-related allegations are properly brought under the Eighth Amendment.

As noted earlier, Plaintiff's complaint asserts that the smoking/laundry room lacked proper ventilation and that after being denied a pay grade promotion, Wilkins sought medical testing due to his concerns about excessive exposure to ETS. He is presumably alleging that the Defendants failed to protect him from a known safety risk.

The Supreme Court, in <u>Farmer v. Brennan</u>, 511 U.S. 825, (1994), described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Id.</u> at 837. Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware

of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk. Id. at 837.

The United States Supreme Court has established a two-prong test to determine whether second-hand smoke exposure violates a prisoner's Eighth Amendment rights. Helling v. McKinney, 509 U.S. 25, 32 (1993). To prevail, the Plaintiff must establish (1) objectively that he is being exposed to unreasonably high levels of ETS, and he must establish (2) subjectively that prison authorities demonstrated a deliberate indifference to his situation. Id. at 35. "In assessing the first factor, the court must conduct an inquiry into the seriousness of the potential harm and into the likelihood that second-hand smoke will actually cause such harm." Id. at 37. The court also has to determine "whether society considers the risk . . . to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. (emphasis in original).

Exposure to ETS is not an objectively serious injury per se. Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) ("Although Helling held that exposure to ETS might satisfy the objective prong of the deliberate indifference test under some circumstances, Helling did not hold that exposure to ETS qualifies as an objectively serious injury per se. Henderson still must show that his present injury from ETS exposure was objectively serious.

22

Henderson was unable to establish any reasonable basis for finding
a significant medical condition or ailment at all resulting from
his exposure to ETS.") (internal citations omitted).

While the consequences of exposure to high levels of ETS for
prolonged periods may be substantial, in the present case there are
no facts alleged upon which to conclude that the purported exposure
qualifies as the degree of exposure necessary for any such adverse
consequences to occur.

Wilkins has simply failed to establish deliberate
indifference.  Plaintiff does not dispute that he is a smoker who
requested a job assignment in the smoking/laundry room.  Moreover,
he also admits that after expressing concerns that his job
assignment was adversely affecting his health, he was given a new
job assignment at the same pay.  Plaintiff also offers no evidence
to suggest he suffers from asthma or other respiratory illness, or
any other malady which is the result of, or even exacerbated by
exposure to ETS.

Based on an application of <u>Farmer</u> and <u>Helling</u> to the
undisputed facts, this Court is confident that no reasonable jury
could conclude that the Defendants engaged in conduct which
constituted deliberate indifference to the prisoner's health.

**<u>Equal Protection</u>**

Wilkins alleges that Defendants violated his equal protection
rights when they failed to grant him a promotion in pay grade.
Plaintiff generally indicates that he was treated differently from

other similarly situated federal prisoners.  Defendants argue that since the decision not to give Plaintiff a promotion in pay grade was not based upon any impermissible reasons, an actionable equal protection claim has not been stated.

A litigant seeking to establish a viable equal protection claim must show an intentional or purposeful discrimination. <u>Wilson v. Schillinger</u>, 761 F.2d 921, 929 (3d Cir. 1985), <u>cert. denied</u>, 475 U.S. 1096 (1986).  However, the Equal Protection Clause "does not deny to States the power to treat different classes of persons in different ways."  <u>Reed v. Reed</u>, 404 U.S. 71, 75 (1971).  The Court of Appeals for the Third Circuit has observed that the Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" <u>Artway v. Attorney Gen.</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985)); <u>see also</u> <u>Kuhar v. Greensburg-Salem Sch. Dist.</u>, 616 F.2d 676, 677 n.1 (3d Cir. 1980) ("An equal protection claim arises when an individual contends that he or she is receiving different treatment from that received by other individuals similarly situated.").

Based upon the undisputed facts, it cannot be concluded that the Defendants engaged in intentional or purposeful discrimination or that they treated Wilkins differently from similarly situated individuals on the basis of his race (Wilkins is Black) or some other impermissible reason.  There are simply no factual averments

24

which could support a claim that the Defendants engaged in actions which intentionally discriminated against the prisoner.  Based on the standards announced in <u>Wilson</u> and <u>Artway</u>, entry of summary judgment in favor of the Defendants with respect to Wilkins' wholly speculative equal protection claim is appropriate.

**<u>Property Loss</u>**

Wilkins alleges that items of personal property were improperly taken from his cell.  Defendants asserts that the Plaintiff's complaint to the extent that it seeks to recover for loss of property does not set forth a proper civil rights claim.

Civil rights complaints cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act of a state employee and where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state.  <u>Parratt v. Taylor</u>, 451 U.S. 527, 543-544 (1981).  The United States Supreme Court has extended <u>Parratt</u> to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy for any loss suffered to his property, a civil rights claim is not available.  <u>Hudson v. Palmer</u>, 468 U.S. 517, 532-533 (1984).

Consequently, regardless of whether the deprivation of property was the result of intentional or negligent conduct, Wilkins may not obtain relief via a civil rights complaint if he has adequate remedies available under the Federal Tort Claims Act

and the BOP grievance procedure.  Since the Plaintiff clearly has both administrative and federal court remedies available to him, his claims concerning deprivation of personal property will be dismissed.

**Access to the Courts**

The Defendants also note that the purported loss of personal property suffered by the Plaintiff included allegations that some of his legal papers were confiscated.  They assert that this claim to the extent that it seeks relief based on a violation of his right of access to the courts is also baseless because Wilkins has not shown that his ability to pursue any litigation was hindered. See  Doc. 30, p. 24, n. 13.

It is well-settled that prison inmates have a constitutional right of meaningful access to law libraries, legal materials or legal services.  Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Failure to provide inmates with legal research material or trained legal assistance can constitute a constitutional violation.  Gluth **v. Kansas**, 951 F.2d 1504, 1507 (9th Cir. 1991).  The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded.  A plaintiff must also allege an actual injury to his litigation efforts.

Based on a review of the record, Plaintiff has not satisfied his burden under Lewis of demonstrating that he suffered an actual

injury to a non-frivolous litigation effort.  Therefore, his denial of access to the courts claim cannot proceed.[8]

**Heck**

Plaintiff's action in part is unquestionably attacking the legality of disciplinary hearings conducted at FCI-Allenwood by Defendants Bittenbender and Farley.  Defendants argue that this Court lacks subject matter jurisdiction over the claims against DHOs Farley and Bittenbender because the challenged disciplinary proceedings have not been overturned.

It is well-settled that a civil rights action may not be employed to challenge the fact or duration of a prisoner's confinement or to seek earlier or speedier release.  Preiser v. Rodriguez, 411 U.S. 475 (1975).  It is undisputed that DHO Bittenbender presided over two separate misconduct hearings involving Wilkins.  Plaintiff was found guilty in both proceedings and sanctioned in part to a loss of good time credits.

DHO Farley presided over a disciplinary hearing involving the Plaintiff.  However, although DHO Farley found Wilkins guilty, the prisoner was not sanctioned to a loss of good time credits.  Pursuant to the standards announced in Preiser, Wilkins' present complaint to the extent that it seeks to challenge the two (2) separate losses of good time credits imposed by DHO Bittenbender,

---

[8]  Plaintiff's claim of interference with his attempts to file grievances is also undermined by the fact that the prisoner filed 116 requests for administrative remedies and this Court has not made a determination that any port of this matter is subject to dismissal on the basis of non-exhaustion.

those allegations are not properly asserted in this proceeding.
However, since the claims asserted against DHO Farley do not
involve a loss of good time credits, said claims are properly
before this Court.

With respect to Plaintiff's request for compensatory damages,
in Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court ruled
that a constitutional cause of action for damages does not accrue
"for allegedly unconstitutional conviction or imprisonment, or for
other harm caused by actions whose unlawfulness would render a
conviction or sentence invalid," until the Plaintiff proves that
the "conviction or sentence has been reversed on direct appeal,
expunged by executive order, declared invalid by a state tribunal
authorized to make such determination, or called into question by a
federal court's issuance of a writ of habeas corpus." Id. at 486-
87.  Thus, Wilkins' requests for compensatory damages against DHO
Bittenbender are premature under Heck because he cannot maintain a
cause of action for monetary damages until the institutional
disciplinary hearings involving that Defendant have been rendered
invalid.  If Plaintiff is able to successfully challenge the
disciplinary hearings conducted by DHO Bittenbender, he may then
reassert his claim for damages in a properly filed civil rights
complaint.

Furthermore, as previously noted the United States Court of
Appeals for the Third Circuit has recognized that civil rights
claims seeking release from confinement sounded in habeas corpus.

28

See <u>Georgevich v. Strauss</u>, 772 F.2d 1078, 1086 (3d Cir. 1985).  In <u>Edwards v. Balisok</u>, 520 U.S. 641, 646 (1997), the United States Supreme Court concluded that a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a civil rights action.  <u>Id</u>. at 646.  Pursuant to <u>Georgevich</u> and <u>Edwards</u>, Plaintiff's requests for injunctive and declaratory relief with respect to his challenged FCI-Allenwood disciplinary proceedings before DHO Bittenbender are not properly raised in a civil rights complaint.

**Due Process**

Plaintiff alleges that his constitutional due process rights were violated when he was placed in the FCI-Allenwood Special Housing Unit (SHU).  The record indicates that Wilkins was held in the SHU from January, 2003 until his transfer to FCI-Otisville in December, 2003.  The Defendants acknowledge that Plaintiff spent time in both administrative detention and disciplinary segregation. Those placements were the result of sanctions imposed following his disciplinary hearings and due to an alleged threat which he posed to another prisoner if released back into general population. Based upon those factors, Defendants conclude that there was no due process violation.

As previously noted herein, any challenge to the Plaintiff's disciplinary hearings which resulted in loss of good time credits must be initially raised in a petition for writ of habeas corpus.

With respect to the remaining disciplinary proceeding which did not result in a loss of good time credits, the United States Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-73 (1974) recognized that inmates have various procedural due process protections in a prison disciplinary proceeding.

The Supreme Court stated in <u>Wolff</u> that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id</u>. at 556.  Nonetheless, the Court held that a prisoner facing serious institutional sanctions such as a loss of good time credits is entitled to some procedural protection before penalties can be imposed. <u>Id</u>. at 563-71.

It set forth five requirements of due process in a prison disciplinary proceeding:  (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  <u>Id</u>.  An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985).  In that case, the Court held that there must be

some evidence which supports the conclusion of the disciplinary tribunal.  The Court of Appeals for the Third Circuit in <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir. 1992), thereafter recognized that the above due process requirements must be satisfied in a prison disciplinary hearing.

In <u>Sandin</u>, 515 U.S. at 480-84, the United States Supreme Court reiterated that the <u>Wolff</u> due process safeguards must be provided when the challenged disciplinary proceeding results in a loss of good time credits.  <u>See</u> <u>also</u> <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991) (a federal prisoner has a constitutionally protected liberty interest in good time credit); <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1417 (M.D. Pa. 1994).

However, under <u>Sandin</u> any due process claim by Plaintiff stemming from a disciplinary hearing which did not result in a loss of good time credits is barred from consideration as the challenged sanctions do not give rise to a protected liberty interest.  Thus, Plaintiff's challenge to the disciplinary hearing before DHO Farley is not actionable under <u>Sandin</u>.  Furthermore, since Wilkins does not allege any violation of the <u>Wolff</u> or <u>Hill</u> safeguards transpired during the proceedings conducted by DHO Farley, he would not be entitled to relief in any event.

As noted above, Plaintiff was also placed in the SHU on administrative custody status.  In <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir. 1997), the Court of Appeals for the Third Circuit addressed an action initiated by a Pennsylvania state inmate who

had been held in administrative custody for a prolonged period. The Court applied <u>Sandin</u> and concluded that placement without any type of due process hearing for a period of fifteen (15) months was not an atypical and significant hardship.  Furthermore, the inmate's "commitment to and confinement in administrative custody did not deprive him of a liberty interest and that he was not entitled to procedural due process protection." <u>Id.</u> at 708.  It added that prolonged confinement in administrative custody was not cruel and unusual punishment.  <u>Id</u>. at 709.  Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues."  <u>Id</u>.

It is undisputed that the Plaintiff's placement in administrative detention resulted from the issuance of an administrative separation order which directed that Wilkins be kept apart from the prisoner who reported the Plaintiff's misuse of mailing privileges.  Clearly, those circumstances provide a legitimate and continuing need for Plaintiff's placement in the SHU on administrative custody status.  Furthermore, the placement was only temporary[9], i.e.; until the Plaintiff was transferred to FCI-Otisville.  Thus, under the standards announced in <u>Sandin</u> and <u>Griffin</u>, a viable constitutional claim has not been stated.

---

[9] Between his Disciplinary and Administrative Custody placements, Wilkins was in the SHU for approximately eleven (11) months.

**IFRP**

This claim regards Plaintiff's participation in the Bureau of Prisons' Inmate Financial Responsibility Plan (IFRP).  Under the IFRP, federal prisoners are encouraged to meet their financial responsibilities by entering into a contractual payment schedule developed for the inmate with the assistance of BOP staff.  An inmate's failure to participate in this program or to make agreed payments can affect his or her eligibility for participation in various BOP programs and may be considered for purposes of parole review

As a result of Plaintiff's January, 2003 placement in the SHU, he was no longer employed.  On or about March 19, 2003, Wilkins learned that he had been placed on IFRP refusal status by Defendant Cozza-Kozicki.  His placement on refusal status also allegedly increased the Plaintiff's security classification level.  The complaint contends that because Wilkins had been making regular IFRP payments for three years, had never been asked if he was now refusing to make payments and had lost his institutional employment, his placement on refusal status was improper.

Defendants argue that since Plaintiff was not arbitrarily placed in refusal status, he has not asserted a cognizable constitutional claim.  They state that after the prisoner missed his first IFRP payment in March, 2003 prison staff met with Wilkins to discuss his financial obligation.  During that meeting Plaintiff was told that he would be placed on refusal status.  After signing

an amended IFRP contract, Wilkins was removed from refusal status on May 6, 2003.  They add that Plaintiff has no due process right in his custody classification and he was never transferred to a higher security level correctional institution.

First, it has been recognized that the IFRP program is constitutionally acceptable.  See Earle v. United States, 2005 WL 2095691 *2 (E.D. Kent.  Aug. 20, 2005)(the IFRP does not deprive inmates of their constitutional due process rights); see also James v. Quinlan, 866 F.2d 627, 630 (3d Cir. 1989).  Second, the placement of Plaintiff' on IFRP refusal status for approximately two (2) months after he failed to make a scheduled payment was an appropriate response by correctional officials and does not rise to the level of a constitutional violation.

Finally, the United States Supreme Court has held that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation omitted)(a federal inmate "has no liberty interest in his security classification").  Consequently, Defendants are entitled to entry of summary judgment with respect to Plaintiff's claims regarding the IFRP and the alleged improper increase in his custody classification.

**Cell Searches**

Plaintiff alleges that from December 10, 2002 to January 5,

34

2003, Correctional Officer Henninger conducted daily searches of his cell.  In a declaration under penalty of perjury, Henninger notes that he was assigned to work in the plaintiff's housing unit during December, 2002.  However, he adds the unit's search log book indicates that Wilkins' cell was searched twice between December 8, 2002 and January 6, 2003.  Specifically, the officer states that he conducted searches of the prisoner's cell on January 1 and 6, 2003. See Doc. 31, Exhibit 6, ¶¶ 7-8.  An additional search was conducted by another correctional officer on January 18, 2003.  Henninger adds that although he seized contraband during the January 1, 2003 search, no legal materials or papers were confiscated during the searches he conducted.  The declaration is accompanied by relevant pages for the housing unit search log book which substantiate the correctional officer's statement. Defendants argue that his claim is meritless because random, unannounced cell searches are both necessary and within acceptable constitutional parameters.

The United States Supreme Court in Hudson v. Palmer, 468 U.S. 517 (1984), established that inmates have no privacy rights in their cells, consequently, there is no constitutional prohibition against prison officials conducting unauthorized cell searches. Id. at 525-26; Rambert v. Durant, No. CIV. A. 95-5636, 1996 WL 253322 *2 (E.D. Pa. May 10, 1996); Gilmore v. Jeffes, 675 F. Supp. 219, 221 (M.D. Pa. 1987).  Cell searches are an important part of prison security and, accordingly, prison officials are entitled to unfettered access without being subjected to claimed violations

under the Fourth Amendment to the Constitution.  <u>Hudson</u>, 468 U.S. at 527.

However, it has also been held that while the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible. <u>Hudson</u>, 468 U.S. at 530; <u>Prisoners' Legal Ass'n v. Roberson</u>, 822 F. Supp. 185, 189 (D.N.J. 1993); <u>Proudfoot v. Williams</u>, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for 'calculated harassment' may constitute an Eighth Amendment violation).  "Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity." <u>Hudson</u> 468 U.S. at 530.

Plaintiff's contention that Henninger conducted daily cell searches over an approximately one month period seems unlikely since it is doubtful that said Defendant worked every day during that period without having a day off.  It is also noted that while Henninger has submitted a statement under penalty of perjury attesting to the fact that he only undertook two searches, the Plaintiff has not offered any other facts or evidence to support his allegation that daily searches were performed by Henninger. Furthermore, Correctional officer Henninger's version of the events in question is corroborated by excerpts from the housing unit's search log book.

In light of Plaintiff's failure to produce affirmative

competent evidence as required under <u>Anderson</u>, and the fact that Wilkins had no reasonable expectation of privacy in his cell or its contents, it is the conclusion of this Court that the prisoner's Fourth Amendment rights were not implicated via random cell searches performed by Correctional Officer Henninger during January, 2003.[10]

**Retaliation**

Plaintiff states that when he began seeking administrative relief regarding his failure to be provided with a pay grade promotion and exposure to ETS, he became the target of retaliation. Wilkins sets forth a laundry list of alleged retaliatory misconduct.  Defendants argue that the Plaintiff has failed to establish that the alleged actions taken against him were the result of a retaliatory motive.

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution."  <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990); <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part

---

[10] There are also allegations that Henninger disrupted the electrical and water service to Plaintiff's cell, threatened to not respond if Plaintiff hit the emergency button in his cell, and told other prisoners that Wilkins was an informant.  These claims are all disputed by both Defendants' opposing brief and Henninger's declaration.  It is the conclusion of this Court these alleged actions also do not rise to the level of constitutional violations.

by a desire to punish him for the exercise of a constitutional right).

In <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected.  If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials.  <u>Id</u>.  <u>Allah</u> defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." <u>Allah</u>, 229 F.3d at 225.

In the present case, Plaintiff asserts that he was given a new job assignment.  However, he acknowledges that this job transfer occurred after he complained about ETS.  Consequently, it was an appropriate response by correctional officials.  Wilkins' second contention maintains that he was subjected to retaliatory cell searches, however, Defendants contend that only three cell searches were performed and that the alleged period of cell searches pre-dates the Plaintiff's filing of his initial work grievance, thereby undermining any retaliation claim.

Next, Plaintiff states that he was issued a misconduct for possessing cigarettes in the SHU.  He does not deny his culpability but rather asserts that this misconduct was improper because the prohibition against cigarettes was set forth in a supplemental policy which he did not receive.  Plaintiff admits that he was guilty of using another inmate's mailing privileges which was the

subject of another disciplinary charge.  Since Plaintiff acknowledges that he committed the charged conduct, his assertion of retaliation is squarely undermined.  Furthermore, Plaintiff's SHU placement on administrative custody status was undertaken to keep Wilkins separated from the prisoner who reported that Plaintiff had used his mailing privileges.  Thus, any retaliatory motive regarding his administrative custody placement has also been negated.  He also admits that his temporary placement on IFRP status occurred after a scheduled payment was not made. Finally, there are no facts alleged which could support a claim that he additional alleged acts of harassment taken by Correctional Officer Henninger were motivated by retaliation.  Consequently, Plaintiff's own admissions and undisputed facts clearly undermine any claim of retaliatory motive.

In conclusion, based on a review of the record, Plaintiff has not alleged sufficient facts to establish a retaliatory motive by any official at SCI-Rockview.  Thus, Wilkins' wholly speculative retaliation claim fails to satisfy the requirements of <u>Rauser</u>.

**Conspiracy**

Plaintiff alleges that the Defendants engaged in a conspiracy for the purpose of subjecting him to harassment and retaliation. Defendants argue that entry of summary judgment is also appropriate with respect to this claim because it is not supported by any facts.  <u>See</u> Doc. 30, p. 36.

In order to set forth a cognizable conspiracy claim, a

39

plaintiff cannot rely on broad or conclusory allegations.  <u>D.R. by</u>
<u>L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364,
1377 (3d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1079 (1993); <u>Rose v.</u>
<u>Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869
F.2d 543, 545 (10th Cir. 1989).  The Court of Appeals for the Third
Circuit has further noted that "[a] conspiracy claim must . . .
contain supportive factual allegations."  <u>Rose</u>, 871 F.2d at 366.
Moreover, "[t]o plead conspiracy adequately, a plaintiff must set
forth allegations that address the period of the conspiracy, the
object of the conspiracy, and the certain actions of the alleged
conspirators taken to achieve that purpose."  <u>Shearin v. E.F.</u>
<u>Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted
action between individuals.  <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377;
<u>Durre</u>, 869 F.2d at 545.  Consequently, a plaintiff must allege with
particularity and present material facts which show that the
purported conspirators reached some understanding or agreement or
plotted, planned and conspired together to deprive plaintiff of a
protected federal right.  <u>Id</u>.; <u>Rose</u>, 871 F.2d at 366; <u>Young v.</u>
<u>Kann</u>, 926 F.2d 1396 1405 n.16; <u>Chicarelli v. Plymouth Garden</u>
<u>Apartments</u>, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  Where a civil
rights conspiracy is alleged, there must be some specific facts in
the complaint which tend to show a meeting of the minds and some
type of concerted activity.  <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170
(8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions

and unsupported speculation.  <u>Young</u>, 926 F.2d at 1405 n.16 (3d Cir. 1991).

None of the Plaintiff's allegations suggest that the Defendants' alleged actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  Furthermore, Wilkins' assertions do not satisfy the pleading requirements of <u>Rose</u>, <u>Deck</u>, and <u>Young</u>.  Specifically, there are no averments of fact in the complaint that reasonably suggest the presence of an agreement or concerted activity between any of the Defendants to violate Plaintiff's civil rights.  Accordingly, the motion for summary judgment will be granted with respect to Wilkins' vague, wholly unsupported allegations of conspiracy.

## Qualified Immunity

Defendants' final argument maintains that they are entitled to qualified immunity.  Specifically they assert that a finding of qualified immunity is appropriate because none of Plaintiff's clearly established constitutional rights were violated.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  <u>Id.</u>; <u>Verney v. Pennsylvania Turnpike Comm'n</u>, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

41

known."  Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99

(3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D.

Pa. 1997).  It has also been held that "qualified immunity is

coextensive for suits brought against state officials under 42

U.S.C. § 1983 (1982), and for suits brought directly under the

Constitution against federal officials." People of Three Mile

Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9

(3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

     The United States Supreme Court in Saucier v. Katz, 533 U.S.

194 (2001), established a two part test for analyzing qualified

immunity claims.  See also Curley v. Klem, 298 F.3d 271 (3d Cir.

2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002).  The initial

inquiry in a qualified immunity examination is whether "the facts

taken in the light most favorable to the plaintiff show a

constitutional violation." Bennett, 274 F.3d at 136.  The second

prong requires a determination as to whether the constitutional

right at issue was clearly established.  If so, then a court must

inquire as to "whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted."

Saucier, 533 U.S. at 201.  A determination that the conduct

violated a clearly established constitutional right precludes the

granting of qualified immunity.

     Pursuant to the above discussion, the first prong of Saucier

has not been satisfied with respect to the claims asserted against

the Defendants.  Further discussion of the Defendants' qualified

immunity argument is not required.

**Conclusion**

Although there are material facts in dispute as to whether Wilkins satisfied the exhaustion of administrative remedies requirement with respect to all of his present claims, this Court's analysis of the merits of Plaintiff's numerous claims establishes that he has failed to establish a claim of constitutional misconduct sufficient enough to survive the Defendants' summary judgment arguments.  Furthermore, the Plaintiff's own admissions and undisputed facts clearly negate his claim that a number of FCI-Allenwood employees conspired to subject him to retaliation. Pursuant to the above discussion, the Defendants' motion for summary judgment will be granted.  An appropriate Order will enter.

 S/Richard P. Conaboy

RICHARD P. CONABOY
United States District Judge

DATED:  MARCH 31 , 2006

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


LEONARD WILKINS,                    :
        Plaintiff                   :
                                    :
    v.                              :        CIVIL NO.3:CV-04-2397
                                    :
                                    :        (Judge Conaboy)
MR. BITTENBENDER, ET AL.,           :
        Defendants                  :


**<u>ORDER</u>**

    AND NOW, THIS 31st DAY OF MARCH, 2006, in accordance with the accompanying Memorandum, IT IS HEREBY ORDERED THAT:



    1.        Defendants' motion for summary judgment (Doc. 21) is granted.

    2.        The Clerk of Court is directed to close the case.




                        <u>S/Richard P. Conaboy</u>

                        Richard P. Conaboy
                        United States District Judge